**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| TERENCE J. HANCOCK, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | No. 09-cv-212 |
| v. | ) | |
| | ) | Honorable Amy J. St. Eve |
| COOK COUNTY WASTE & RECYCLING, INC., | ) | |
| f/k/a/ WINDY CITY WASTE & RECYCLING, | ) | |
| INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

AMY J. ST. EVE, District Court Judge:

Before the Court is Plaintiffs Terrence J. Hancock, John Lisner, William Logan, Michael

Richardson, Steve Vogrin, and Thomas J. Yonker's, trustees of the Local No. 731, I.B. of T.,

Private Scavengers and Garage Attendants Pension Trust Fund ("Plaintiffs"), motion for

summary judgment. In their complaint, Plaintiffs allege two claims pursuant to the Employee

Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.* Count I alleges

withdrawal liability under § 4201 of ERISA, 29 U.S.C. § 1381(b), against Defendant Cook

County Waste & Recycling, Inc., f/k/a Windy City Waste & Recycling, Inc. ("Windy City" or

"Cook County f/k/a Windy City"). Count II alleges controlled group liability under § 4201 of

ERISA, 29 U.S.C. § 1381(b), against Defendants Crosstown Waste & Recycling, Inc. f/k/a Will

County Waste & Recycling, Inc. ("Crosstown"), Cook County Waste & Recycling of Chicago &

Suburbs, Inc. f/k/a Southtown Disposal, Inc. ("Southtown"), and "any other members of Windy

City's Control Group." (R. 1-1, Compl. at 8.) (Defendants are collectively referred to as the

"Windy City Control Group"). For the following reasons, the Court grants Plaintiffs' motion for summary judgment.

## BACKGROUND

### I. Northern District of Illinois Local Rule 56.1

When determining summary judgment motions, the Court derives the background facts from the parties' Local Rule 56.1 statements. Specifically, Local Rule 56.1 assists the Court by "organizing the evidence, identifying undisputed facts, and demonstrating precisely how each side propose[s] to prove a disputed fact with admissible evidence." *Bordelon v. Chicago Sch. Reform Bd. of Trs.*, 233 F.3d 524, 527 (7th Cir. 2000). Local Rule 56.1(a)(3) requires the moving party to provide "a statement of material facts as to which the moving party contends there is no genuine issue." *Cracco v. Vitran Exp., Inc.*, 559 F.3d 625, 632 (7th Cir. 2009). "The opposing party is required to file 'a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon.'" *Id.* (citing N.D. Ill. R. 56.1(b)(3)(B)). In addition, Local Rule 56.1(b)(3)(C) requires the nonmoving party to present a separate statement of additional facts that require the denial of summary judgment. *See Ciomber v. Cooperative Plus, Inc.*, 527 F.3d 635, 643-44 (7th Cir. 2008). Pursuant to the Local Rules, the Court will not consider any additional facts proposed in the nonmoving party's Local Rule 56.1(b)(3)(B) Response, but instead must rely on the nonmovant's Local Rule 56.1(b)(3)(C) Statement of Additional Facts when making factual determinations. *See id.* at 643; *Cichon v. Exelon Generation Co., L.L.C.*, 401 F.3d 803, 809 (7th Cir. 2005) ("Local Rule 56.1 requires specifically that a litigant seeking to oppose a motion for summary judgment file a response that

contains a separate 'statement … of any additional facts that require the denial of summary judgment.'") (emphasis in original).

Moreover, the purpose of Rule 56.1 statements is to identify the relevant evidence supporting the material facts, not to make factual or legal arguments, *see Cady v. Sheahan*, 467 F.3d 1057, 1060 (7th Cir. 2006), and thus the Court will not address the parties' arguments made in their Rule 56.1 statements and responses. Also, the requirements for responses under Local Rule 56.1 are "not satisfied by evasive denials that do not fairly meet the substance of the material facts asserted." *Bordelon*, 233 F.3d at 528. Further, the Court may disregard statements and responses that do not properly cite to the record. *See Cichon*, 401 F.3d at 809-10. Finally, "hearsay is inadmissible in summary judgment proceedings to the same extent that it is inadmissible in a trial." *Eisenstadt v. Centel Corp.*, 113 F.3d 738, 742 (7th Cir. 1997). With these standards in mind, the Court turns to the relevant facts of the case.

## II.     Relevant Facts

Plaintiffs are trustees of the Local No. 731, I.B. of T., Private Scavengers and Garage Attendants Pension Trust Fund ("Fund"). (R. 57-1, Pl.'s Rule 56.1 Stmt. Facts, ¶ 1.)[1] Plaintiffs administer the Local No. 731, I.B. of T., Private Scavengers and Garage Attendants Pension Plan ("Plan"), a multiemployer pension plan within the meaning of ERISA, 29 U.S.C. §§ 1002 and 1301(a)(3). *Id.* at ¶ 2. Pursuant to ERISA 29 U.S.C. § 1132(a) and 1451(a)(1), as trustees of the Fund Plaintiffs may bring this civil action on behalf of the Fund for purposes of collecting

---

[1] Both parties include legal arguments in their Rule 56.1 statements of facts and responses. It is inappropriate to make legal arguments in Rule 56.1 statements and responses, and thus the Court will not consider these arguments. *Cady*, 467 F.3d at 1060 (7th Cir. 2006).

withdrawal liability from Defendants. *Id.* at ¶ 3. Plaintiffs administer the Fund at 1000 Burr Ridge Parkway, Burr Ridge, Illinois, 60527, its principal place of business. *Id.* at ¶ 4.

Windy City was an Illinois corporation that operated a waste and recycling business. (R. 65-1, Def.'s Rule 56.1 Stmt. Add'l Facts, ¶ 1.) Defendants Southtown and Crosstown are also Illinois corporations. (R. 57-1, ¶¶ 8-9.) As of February 1, 2008, Robert Wiserman owned 100% of Windy City, Southtown and Crosstown. *Id.* at ¶ 11. From 2000 through at least September 30, 2007, Windy City was subject to a collective bargaining agreement with Local Union No. 731, affiliated with the International Brothers of Teamsters ("Union") ("CBA"). (R. 57-1, ¶ 14; R. 65-1, ¶ 2.) The CBA contained an "evergreen" provision that provided that the CBA "shall continue in full force and effect through September 30, 2008, and shall continue automatically on an annual basis thereafter, unless written notice is given by either party sixty (60) days prior to September 30, 2008 . . . ." (R. 67-3, p. 14, Article XXXII.) The CBA also contains an addendum effective October 1, 2003 that states that the CBA shall apply to employees who perform work involving the transporting of waste materials from transfer stations to landfills or other on-off loading destinations. (R. 65-1, ¶ 5; R. 67-3, Pl. Ex. 2, pp. 19-27.)

In February 2008, Windy City entered into a purchase and sale agreement with Groot, Inc. ("Groot") in which Windy City sold its equipment and assets to Groot, including the name Windy City Waste, Inc. (R. 57-1, ¶ 15; R. 65-1, ¶ 6.)[2] On February 1, 2008, Windy City terminated some if its employees. (R. 57-15, Resp. to No. 64.) In response to discovery in a

---

[2] In their response to Plaintiffs' statement of facts, Defendants dispute that Windy City sold all of its equipment and assets to Groot, but fail to cite to the record in support of this denial. (R. 66-1, Resp. to ¶ 15.) Defendants similarly dispute many of Plaintiffs' submitted facts with legal or factual arguments, but fail to appropriately cite to the record in support of their denials. *See* R. 66-1, Resp. to ¶¶ 9, 15, 27-29, 30-38, 40-44, 46, 52-63. As the Seventh Circuit has stated, the Court may disregard statements and responses that do not properly cite to the record. *See Cichon*, 401 F.3d at 809-10. The Court will accordingly disregard Defendants' unsubstantiated denials.

related delinquency case proceeding in the United States District Court for the Northern District of Illinois, Windy City asserted that it ceased waste and recycling operations on February 1, 2008, and denied that it had not sold its business. (R. 57-1, ¶¶ 23-24.) In a letter dated April 4, 2008, Windy City informed the Fund that it was no longer in business effective February 1, 2008. *Id.* at ¶ 26. Based on this evidence, the Fund's trustees determined that Windy City permanently ceased to have an obligation to the Fund. *Id.* at ¶ 27. Although Windy City informed Plaintiffs that it had ceased operations and Plaintiffs sent Windy City a notice of withdrawal liability, as of May 2008, neither party to the CBA explicitly invoked Article XXXII which provides that the CBA will continue unless written notice is given by one party. (R. 65-1, ¶ 14; R. 67-3, Art. XXXII.)

After the sale of its assets to Groot, Cook County f/k/a Windy City continued Windy City's business of transporting waste and/or recycling materials from transfer stations, and continued to employ at least two drivers to perform the transporting. (R. 65-1, ¶¶ 7, 12.) Cook County f/k/a Windy City maintained driver logs showing driver destinations and transfer work. *Id.* at ¶ 8. Due to this continued transfer work, Cook County f/k/a Windy City attempted to contribute to the Fund for the month December 2008. *Id.* at ¶ 9. Robert Wiersma contends that from April 2008 through April 2009, Cook County f/k/a Windy City attempted to contact the Union concerning the status of the CBA, but the Union never responded. (R. 65-1, ¶ 13; R. 67-2, Wiserman Aff., ¶ 10.) Conversely, Terrence Hancock contends that, in early 2009, the Union met with Robert Wiersma, President of Cook County f/k/a Windy City. (R. 68-1, Ex. A, Dep. of T. Hancock, pp. 62-63.) Hancock testified that during that 2009 meeting, Wiersma inquired about entering into a new CBA with the Union, but Hancock declined Wiersma's request. *Id.*

After determining that Windy City no longer had an obligation to the Fund, on May 22, 2008, and pursuant to 29 U.S.C. §§ 1382(2) and 1399, the Fund issued a notice and demand of estimated withdrawal liability to the Windy City Control Group in the amount of $169,923. (R. 57-1, ¶¶ 29-30.) On May 23, 2008, Cook County f/k/a Windy City received the May 22, 2009 notice and demand. *Id.* at ¶ 31. The May 22, 2008 estimated notice and demand informed Cook County f/k/a Windy City that its first installment of withdrawal liability in the amount of $20,790 was due to the Fund by July 22, 2008. (R. 57-4, Ex. A-2, p. 2.) The estimated notice and demand further informed Cook County f/k/a Windy City that it had 90 days from the date of receipt of the letter to request review of the letter. (R. 57-1, ¶ 31.) Cook County f/k/a Windy City did not submit any payment to the Fund in response to the May 22, 2008 estimated demand and notice. *Id.* at ¶ 34.

On July 18, 2008, the Union mailed a notice of expiration of the CBA to Windy City which stated, "please let this letter serve as written notice of Local Union's intent to terminate the current [CBA]." (R. 67-7, p. 2.) The United States Postal Service returned the letter to the Union as "unclaimed." (R. 67-1, p. 3.) Wiersma asserts that, "[t]o the best of my knowledge, no one at Windy City Waste/Cook County Waste had any knowledge or any notice of any kind that the Union had tried to mail a notice of termination of the CBA or that the Union believed that the CBA has been terminated." (R. 67-2, Wiersma Aff., ¶ 9.) Due to the dispute over Windy City's receipt of notice to terminate the CBA and whether the withdrawal notice constitutes notice of termination of the CBA, the parties dispute whether the CBA was automatically renewed from October 1, 2008 to September 30, 2009. (R. 65-1, ¶ 19; R. 57-1, ¶¶ 15-27.)

On July 31, 2008, the Fund issued a notice of default to Cook County f/k/a Windy City for its failure to make the first required withdrawal liability payment that was due on July 22, 2008. (R. 57-1, ¶ 35.) Cook County f/k/a Windy City received the notice of default on August 11, 2008. *Id.* at ¶ 37. The notice of default informed Cook County f/k/a Windy City that if it did not cure its failure to pay the first installment within 60 days it would be in default and the full amount of withdrawal liability would become immediately due and payable. *Id.* at ¶ 36. Despite the default notice, Defendants did not submit any payment to the Fund in response to the May 22, 2008 estimated notice and demand. *Id.* at ¶ 40. Moreover, prior to September 1, 2008, Windy City did not request the Fund to review its withdrawal determination pursuant to 29 U.S.C. § 1399(b)(2)(A). (R. 57-1, ¶ 39.) More than sixty days have passed since Cook County f/k/a Windy City received the August 11, 2008 notice of default. *Id.* at ¶ 41.

In January 2009, the Fund determined that pursuant to 29 U.S.C. § 1381(b), Windy City's liability for its withdrawal during the plan year October 1, 2007 through September 30, 2007 was $216,121. *Id.* at 42. Accordingly, on January 9, 2009, the Fund sent a revised notice and demand to the Wind City Control Group stating that its actual withdrawal liability was $216,121, and that it was in default on its payments. *Id.* at ¶¶ 44, 46; R. 57-6, Ex. A-4. Cook County f/k/a Windy City received the revised notice and demand on January 12, 2009. (R. 57-1, ¶ 45.)

Also in January 2009, Windy City sent a report and purported contribution payments for the work month December 2008 to the Fund, in the amount of $290, and its related Welfare Fund, in the amount of $416.80. *Id.* at ¶¶ 47, 49-50. In response, in a January 15, 2009 letter, the Fund advised Windy City that, based on its complete withdrawal from the Plan and failure to remit withdrawal liability payments, Windy City was in default. (R. 57-9, Ex. A-7.) The

January 15, 2009 letter further informed Windy City that as there was no current obligation for Windy City to contribute to the Fund, the Fund was returning Windy City's $416.80 contribution payment to the Welfare Fund for December 2008, and applying the check for $290 made out to the Fund to the defaulted withdrawal liability payments due to the Fund. *Id.*

Prior to February 1, 2009, Windy City did not initiate arbitration of the Fund's withdrawal liability. (R. 57-1, ¶ 51.) On May 7, 2009, however, Cook County f/k/a Windy City sent a notice of initiation of arbitration to the Fund. (R. 65-1, ¶¶ 21-22; R. 67-8, p. 1.) The notice indicated that Cook County f/k/a Windy City disputed the Fund's determination of withdrawal liability, but did not indicate whether Windy City had initiated arbitration with the American Arbitration Association ("AAA"). (R. 67-8, p. 1.) On May 26, 2009, Plaintiffs responded to Cook County f/k/a Windy City stating that the demand for arbitration was untimely and that the Fund's rules require arbitration through the AAA. (R. 67-9, p. 1.)

The parties dispute whether an assessment of withdrawal liability against Cook County f/k/a Windy City will result in severe financial hardship to the company. Robert Wiersma asserts that if Cook County f/k/a Windy City is forced to pay the purported withdrawal liability it will suffer severe financial hardship. (R. 67-2, Wiersma Aff., ¶ 13.) Defendants have submitted Cook County's most recent financial records to the Court. A letter from Garrigan & Kovach, Ltd. to Cook County f/k/a Windy City regarding Cook County's statements of assets, liabilities and equity cash-basis of the company states that "[m]anagement has elected to omit substantially all of the disclosures originally included in financial statements prepared on the cash basis of accounting. If the omitted disclosures were included in the financial statements, they might influence the user's conclusions about the company's assets, liabilities, equity, revenues, and

expenses.  Accordingly, these financial statements are not designed for those who are not informed about those matters."  (R. 67-10, p. 1.)  Plaintiffs have also established that Windy City received $1,056,568.09 at the closing of sale of assets.  (R. 68-1, Ex. 2., Fund Disbursements at Closing.)

## LEGAL STANDARD

### I.    Summary Judgment Standard

Summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); *see Knight v. Wiseman*, 590 F.3d 458 (7th Cir. 2009).  A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).  In determining summary judgment motions, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts."  *Scott v. Harris*, 550 U.S. 372, 127 S. Ct. 1769, 1776, 167 L. Ed. 2d 686 (2007).  The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986).  "Thus, to survive summary judgment, the nonmoving party must present evidence sufficient to establish a triable issue of fact on all essential elements of its case."  *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 702 (7th Cir. 2009); *see Rozskowiak v. Vill. of Arlington Heights*, 415 F.3d 608, 612 (7th Cir. 2005) (the nonmoving party must present "evidence on which the jury could reasonably find for the nonmoving party.").

## II.     Withdrawal Liability Pursuant to ERISA

The Seventh Circuit has set forth the standard governing actions by multi-employer

pension plans to collect withdrawal liability payments from corporations that are parties to

collective bargaining agreements.

> The MPPAA protects employees in multiemployer pension plans by requiring employers
> who withdraw from such plans to pay their share of "unfunded vested benefits." 29
> U.S.C. § 1381(b)(1). This is known as "withdrawal liability." When an employer
> withdraws, the plan sponsor calculates the amount of liability and, "[a]s soon as
> practicable," notifies the employer of the liability and demands payment. 29 U.S.C. §
> 1399(b)(1). This "notice and demand" must include the amount of liability and a
> schedule of installment payments. When the employer receives the notice, it must begin
> paying according to the schedule. *See Robbins v. Pepsi-Cola Metro. Bottling Co.*, 800
> F.2d 641, 642-43 (7th Cir. 1986) (per curiam). The statute places a premium on prompt
> payment; it is a "pay now, dispute later" scheme. *Id.* at 642. But the withdrawing
> employer "owes nothing" until the plan notifies it of its liability and demands payment.
> *Milwaukee Brewery Workers' Pension Plan v. Joseph Schlitz Brewing Co.*, 513 U.S. 414,
> 423, 115 S. Ct. 981, 130 L. Ed. 2d 932 (1985).

*Chicago Truck Drivers v. El Paso CGP Co.*, 525 F.3d 591, 595-596 (7th Cir. 2008). The

Seventh Circuit also has addressed the steps necessary for an employer to take if it seeks to

dispute withdrawal liability:

> If the employer wishes to dispute a plan sponsor's assessment of withdrawal liability, it
> must arbitrate the issue. *See* 29 U.S.C. § 1401(a)(1). Exceptions to the arbitration
> requirement are made only in the rarest cases. *See Central States, Se. & Sw. Areas
> Pension Fund v. Slotky*, 956 F.2d 1369, 1373 (7th Cir. 1992). Upon receipt of the notice
> and demand, the employer has 90 days to request an informal review by the plan of the
> assessment. *See* 29 U.S.C. § 1399(b)(2)(A). The employer then has roughly 120
> additional days to demand arbitration. *See* 29 U.S.C. § 1401(a)(1). If an employer fails
> to demand arbitration, the assessment becomes "due and owing on the schedule set forth
> by the plan sponsor." 29 U.S.C § 1401(b)(1).

*Id.*

Moreover, "[w]hen a plan sponsor sues to collect withdrawal liability, it may sue the

withdrawing employer or any trade or business under 'common control' with the employer

because members of a 'controlled group' are jointly and severally liable for the withdrawal." *Id.*; 29 U.S.C. § 1301(b)(1). This control group liability provision permits a plan "to deal exclusively with the defaulting employer known to the fund, while at the same time assuring [itself] that legal remedies can be maintained against all related entities in the control group." *Chicago Truck Drivers*, 525 F.3d at 595-596 (internal citation omitted). "Thus, any notice sent to one member of a controlled group is considered constructive notice to all other members of such a group." *Id.* at 596 (internal citation omitted).

## ANALYSIS

Defendants' primary argument is that Plaintiffs cannot prevail on summary judgment with respect to withdrawal liability unless they first prove that the employer "actually incurred" withdrawal liability under 29 U.S.C. § 1399(b). Defendants argue that Plaintiffs cannot meet this standard because there are disputed issues of fact regarding (i) whether and when the CBA was terminated, and (ii) whether Defendants "actually withdrew" from the Fund. Defendants, however, mistake the applicable legal standard for summary judgment in a withdrawal liability case. Applying the correct standard, Plaintiffs have established that they are entitled to summary judgment on their withdrawal liability claim.

## I.   Plaintiffs Have Met the Requirements for Summary Judgment in a Withdrawal Liability Case

Pursuant to 29 U.S.C. § 1401, if a defendant fails to initiate arbitration regarding a disputed withdrawal liability, "the amounts demanded by the plan sponsor under [29 U.S.C. § 1399(b)(1)] shall be due and owing on the schedule set forth by the plan sponsor. The plan sponsor may bring an action in a State or Federal court of competent jurisdiction for collection." Accordingly, to prevail on a collection claim, the Fund must show that: (1) "the Fund was a

11

multiemployer pension plan [pursuant to the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA")] and the Defendants were an employer for the purposes of ERISA," (2) "the Fund notified the Defendants of their assessed liability," and (3) "Defendants failed to timely initiate arbitration." *Chicago Truck Drivers*, 525 F.3d at 598.

### A.    The Fund is a Multiemployer Pension Plan and Defendants are Employers

Plaintiffs have established the first requirement for summary judgment in a withdrawal liability case.  The parties agree that the Fund is a multiemployer pension plan.  Defendants do not dispute that Windy City was subject to a CBA that obligated it to contribute to the Fund, and therefore was an employer withing the meaning of the MPPAA.  *See Central States, Southeast & Southwest Areas Pension Fund v. Progressive Driver Servs.*, 940 F. Supp. 1311, 1315 (N.D. Ill. 1996) (an employer for purposes of the MPPAA is a person "who is obligated to contribute to a plan either as a direct employer or in the interest of an employer of the plan's participants") (citing *Central States, Southeast & Southwest Areas Pension Fund v. Central Transport, Inc.*, 85 F.3d 1282, 1287 (7th Cir. 1996)).

### B.    The Fund Notified Windy City of its Withdrawal Liability

Plaintiffs have also established that the Fund notified Windy City of its assessed liability. Pursuant to 29 U.S.C. §§ 1382(2) and 1399, to collect withdrawal liability a plan must first determine the amount due by a particular employer, and then send the employer a notice and demand for payment.  After making a determination that Windy City no longer had an obligation to the Fund, the Fund issued a notice and demand of estimated withdrawal liability to the Windy City Control Group in the amount of $169,923 on May 22, 2008.  On July 31, 2008, the Fund issued a notice of default to Cook County f/k/a Windy City for its failure to make the first

required withdrawal liability payment that was due on July 22, 2008. Finally, after making a final withdrawal liability assessment in January 2009, the Fund sent a revised notice and demand to the Windy City Control Group on January 9, 2009 stating that Windy City's actual withdrawal liability was $216,121, and that it was in default on its payments. Defendants admit receiving each of these notices.

### C. Defendants Failed to Timely Initiate Arbitration

The Windy City Control Group did not timely initiate arbitration of the Fund's estimated withdrawal liability under 29 U.S.C. § 1401(a)(1). If an employer wishes to dispute a plan's assessment of withdrawal liability, it must arbitrate the issue. 29 U.S.C. § 1401(a)(1). Pursuant to 29 U.S.C. § 1399(b)(2)(A), upon receipt of the Fund's notice and demand, an employer has 90 days to request an informal review by the plan. Either party may initiate the arbitration proceeding within a 60-day period after the earlier of (i) the plan's response to the employer's request for review, or (ii) 120 days after the date of the employer's request for review. If an employer fails to demand arbitration, the assessment becomes "due and owing on the schedule set forth by the plan sponsor." 29 U.S.C § 1401(b)(1); *Chicago Truck Drivers*, 525 F.3d at 595-596.

Based on its admission that it received the Fund's initial withdrawal liability assessment on May 23, 2008, Windy City had 90 days, until August 21, 2009, to initiate the informal review/arbitration process. 29 U.S.C. §§ 1399 and 1401. Defendants admit that Windy City did not request review or arbitration by that date. Windy City also did not request informal review of the Plan's January 9, 2009 revised withdrawal liability assessment within 90 days of its receipt of the revised notice on January 12, 2009. "Failure to initiate arbitration has a simple

result--the amount demanded by the pension plan sponsor becomes due and owing." *Central States, Southeast & Southwest Areas Pension Fund v. Louisville Auto Rail Servs.*, 67 F. Supp. 2d 933, 936 (N.D. Ill. 1999) (holding that withdrawal liability amounts demanded by the fund were due and owing where employer failed to timely demand arbitration) (citing *Robbins v. Admiral Merchants Motor Freight, Inc.*, 846 F.2d 1054, 1056 (7th Cir. 1988); 29 U.S.C. § 1401(b)(1)). *See also Chicago Truck Drivers.*, 525 F.3d at 598 (where defendants waived their right to arbitration by failing to comply with statutory requirements, the Fund automatically prevails and the court need only determine damages)**;** *Central States, Southeast & Southwest Areas Pension Fund v. Ditello*, 974 F.2d 887, 892 (7th Cir. 1992) (where employer failed to timely initiate arbitration, pursuant to 29 U.S.C. § 1401(b)(1) employer was liable for the amount of withdrawal liability demanded by Central States). Because Defendants have not established any genuine issues of material fact with regard to the elements necessary for Plaintiffs to prevail on their motion for summary judgment, Windy City is liable to Plaintiffs for withdrawal liability in the amount of $216,121.

## II.     Defendants' Defenses to Summary Judgment

Each of the defenses to Plaintiffs' motion for summary judgement raised by Defendants are based on Defendants' misconstruction of the legal standard in a withdrawal liability case at the summary judgment stage, and are therefore unavailing. Defendants argue that there are three factual disputes that preclude summary judgment: (i) whether and when the CBA between the Union and Windy City was terminated, (ii) whether Windy City withdrew from the Fund in February 2008, and (iii) whether Defendants timely initiated arbitration.

The first two factual disputes raised by Defendants -- whether and when the CBA was

14

terminated and whether Windy City withdrew from the Fund -- are defenses to withdrawal

liability. Indeed, Defendants' response to Plaintiffs' statement of facts is replete with the same

argument: "The collective bargaining agreement was and/or is still in effect and there was no

withdrawal from the Fund by the Defendants. As such Defendants have no withdrawal liability

to the Fund and therefore . . . ": (i) "Defendants were not required to make any withdrawal

liability payments," (ii) "were not in default," (iii) "there was nothing to initiate arbitration

about," (iv) "there was nothing to request review about," (v) "no interest could accrue on a non-

existing liability," and (vi) "the Fund is . . . not entitled to any liquidated damages, withdrawal

liability, attorneys' fees or costs." (R. 66-1, Responses to ¶¶ 32-46, 51-63.)

The provisions of the MPPAA, however, make clear that any defense to withdrawal

liability must be raised through arbitration. Otherwise, the party waives those defenses. *Central*

*States Southeast & Southwest Areas Pension Fund v. Burggrabe Truck Lines, Inc.*, 1999 WL

988793, 1999 U.S. Dist. LEXIS 16818 (N.D. Ill. Oct. 27, 1999) (where defendants did not

request an informal review or initiate arbitration upon receipt of the Fund's withdrawal liability

assessment notice, defendants waived their rights to challenge the Fund's withdrawal liability

assessment). *See also Chi. Truck Drivers, Helpers, & Warehouse Workers Union Pension Fund*

*v. Loyal Casket Co.*, 2008 WL 938409, 2008 U.S. Dist. LEXIS 27832 (N.D. Ill. Apr. 7, 2008)

("By failing to timely initiate arbitration, [employer] waived potential defenses to the Fund's

withdrawal liability assessment, and the amounts owed to the Fund became due.") (citing 29

U.S.C. § 1401(b)(1) and *Robbins*, 866 F.2d at 900 (due to failure to timely initiate arbitration,

defendant waived right to contest withdrawal liability)); *Central States, Southeast & Southwest*

*Areas Pension Fund v. Conaway*, 1991 WL 61471, 1991 U.S. Dist. LEXIS 5096 (N.D. Ill. Apr.

17, 1991) ("Courts have rigidly interpreted MPPAA's arbitration provision as an exhaustion requirement" and "[u]nder this interpretation the failure of an employer to initiate arbitration is deemed to preclude any further challenge or defense to the withdrawal assessment made by the Fund.") (citing *Robbins*, 866 F.2d at 902).

In fact, the Seventh Circuit has explicitly addressed Defendants' argument regarding whether and when a withdrawal occurred and held that such issues are defenses appropriate for arbitration, not resolution by the court:

> It is, of course, true that withdrawal liability does not arise until a withdrawal has occurred, but whether and when there has been a withdrawal is part of the merits, which, under the MPPAA, must be resolved in arbitration. [Employer] contends that the language of the act makes it clear that there must be actual and uncontested withdrawal from a plan before an employer can issue any notice of withdrawal liability -- including interim liability. This is incorrect. Such a policy would be directly at odds with the mandate of the MPPAA that, until the merits of a dispute about withdrawal are decided, an employer is liable for interim payments (subject, of course, to refund if he prevails).

*Cent. States, Southeast & Southwest Areas Pension Fund v. Bomar Nat'l, Inc.*, 253 F.3d 1011, 1015 (7th Cir. 2001). Defendants argue that *Bomar* does not control the outcome of the present motion because it did not involve any interpretation of a CBA. Notwithstanding this factual distinction, *Bomar* controls in this context.

Indeed, to support their argument that the court, and not arbitration, is the proper forum for resolution of whether and when Defendants withdrew from the Fund, Defendants rely on *I.A.M. Nat'l Pension Fund Ben. Plan C v. Stockton Tri Industries*, 727 F.2d 1204, 1210 (D.C. Cir. 1984). *Stockton*, however, is a non-controlling case that is factually distinct from the present case. In *Stockton*, the District of Columbia Circuit determined that the district court was the proper forum for resolution of whether an employer withdrew from a plan. The court held:

> [W]e note that the issue before the district court was purely one of statutory

16

> interpretation. The question below was whether an employer "permanently cease[d] to have an obligation to continue under the plan" under section 1383(a)(1) when the employer expressed the intent to withdraw from the Fund but was still contractually bound to make contributions. No dispute exists in this case that Stockton did in fact send a telegram on April 14, 1980, expressing its intent to withdraw from the Fund. Nor is there any dispute that Stockton's 1977 collective bargaining agreement was never abrogated prior to MPPAA's effective date. Nor is it gainsaid that by the plain terms of the 1977 collective bargaining agreement Stockton was contractually obligated to contribute to the Fund until April 30, 1980. Because there are neither questions of fact nor issues of contractual interpretation to resolve, an arbitrator skilled in pension and labor matters would have no superior expertise to offer.

*Stockton*, 727 F.2d at 1210. Here, whether and when the Windy City withdrew from the Fund and whether the CBA was still in effect are both contested issues of fact. Moreover, pursuant to the Seventh Circuit's ruling in *Bomar*, an arbitrator must resolve those issues. Indeed, one court in this district has specifically highlighted that the Seventh Circuit adopted a rule directly contrary to the rule adopted by the D.C. Circuit in *Stockton*. *See Robbins v. Chipman Trucking, Inc.*, 693 F. Supp. 628, 635 (N.D. Ill. 1986) (distinguishing *Stockton* and other similar circuit holdings and holding that "[h]aving set forth the conflict, we now adopt the rule of the waiver cases that by failing to seek arbitration, a party forfeits its opportunity to raise defenses to the existence or amount of its withdrawal liability, even a defense based solely on statutory interpretation"). Accordingly because Defendants did not raise their defenses to summary judgment through arbitration, they are waived.

Defendants' argument regarding a disputed issue of fact over the timeliness of the initiation of arbitration also fails. Defendants appear to argue that they timely initiated arbitration because (i) Cook County f/k/a Windy City "tried to contact the Union concerning the status of the CBA beginning in April 2008," and (ii) "on May 7, 2009, Cook County [f/k/a Windy City] sent a letter to Plaintiff initiating arbitration." (R. 67-1, Defendants' Response, p.

11.) Defendants present no legal authority, however, to support their contention that their attempts to contact the Union in April of 2008 constitute an initiation of arbitration. Moreover, Cook County f/k/a Windy City's May 7, 2009 letter regarding arbitration was untimely given Plaintiffs' May 23, 2008 notice of withdrawal liability, Plaintiffs' January 9, 2009 revised notice of withdrawal liability, and the time requirements set forth in 29 U.S.C. § 1399(b)(2)(A) and 29 U.S.C. § 1401(b)(1).

Finally, Defendants make a cursory argument that because payment of the withdrawal liability would result in irreparable harm to Defendants and Defendants have a colorable claim that there is no liability under the MPPAA, the Court should set aside the "pay now, dispute later" procedure employed in the Seventh Circuit. The Seventh Circuit has held that there are exceptions to the "pay now, dispute later" procedures under the MPPAA. "One exception articulated by this court is that we may excuse interim payments pending arbitration if the employer can show both that the pension fund lacks a colorable claim and that the employer will suffer severe financial hardship if compelled to make interim payments." *Bomar*, 253 F.3d at 1016. The full extent of Defendants' argument based on this exception, however, is that "the most recent financial statements and tax returns of Cook County show that it would not survive a requirement that it make purported withdrawal liability payments while it disputes the Plaintiff's claims" and that "Cook County [f/k/a Windy City] would, therefore, be effectively deprived of its right to dispute the Fund's claims." (R. 67-1, Defendants' Response, p. 15.) Defendants do not explain how the financial statements and tax returns demonstrate severe financial hardship, nor do Defendants establish that the Fund lacks a colorable claim. As the Seventh Circuit has held, cursory and undeveloped arguments are deemed waived. *McCoy v. Maytag Corp.*, 495

F.3d 515, 525 (7th Cir. 2007). Moreover, the accountants who prepared Defendants' financial statements state the Defendants' management omitted relevant disclosures that "might influence the user's conclusions about the company's assets, liabilities, equity, revenues, and expenses." (R. 67-10, p. 1.) Due to this caveat and Defendants' failure to explain its irreparable harm argument in more detail, Defendants have failed to establish that they should be subject to the Seventh Circuit's exception to the "pay then dispute" procedure.

## III.  Control Group Liability

To impose withdrawal liability on an organization other than the one obligated to the Fund, Windy City, two conditions must be satisfied: (1) "the organization must be under 'common control' with the obligated organization," and (2) "the organization must be a trade or business." *McDougall v. Pioneer Ranch L.P.*, 494 F.3d 571, 577 (7th Cir. 2007). Defendants do not dispute that Robert Wiersma owned 100% of Windy City, Southtown and Crosstown, or that these entities are also businesses. Accordingly, Plaintiffs have established that Windy City, Crosstown and Southtown are control group members, and accordingly jointly and severally liable for the withdrawal liability amounts owed to Plaintiffs. *Central States, Southeast & Southwest Areas Pension Fund v. Mississippi Warehouse Corp.*, 853 F. Supp. 1053, 1057 (N.D. Ill. 1994) ("29 U.S.C. § 1301(b)(1) states that . . . all trades or businesses under common control are to be treated as a single employer, and thus subject to joint and several liability.") (citing *Ditello*, 974 F.2d at 890).

## IV.  Interest, Liquidated Damages, Attorneys' Fees and Costs

In an action to collect withdrawal liability payments, "any failure of the employer to make any withdrawal liability payment within the time prescribed shall be treated in the same

manner as a delinquent contribution (within the meaning of section 515 [29 U.S.C. § 1145]).”

29 U.S.C. § 1451(b). 29 U.S.C. § 1132(g)(2) provides that in any action in which a judgment in

favor of the plan is awarded under § 1145, “the court shall award the plan-- (A) the unpaid

contributions, (B) interest on the unpaid contributions, (C) an amount equal to the greater of – (i)

interest on the unpaid contributions, or (ii) liquidated damages provided for under the plan in an

amount not in excess of 20 percent [of the unpaid amounts], (D) reasonable attorneys’ fees and

costs of the action, to be paid by the defendant, and (E) such other legal or equitable relief as the

court deems appropriate.” These damages are mandatory in a successful withdrawal liability

suit. *Slotky*, 956 F.2d at 1377.

     As described above, Plaintiffs have established that they are entitled to $216,121 in

withdrawal liability. Defendants agree that they are entitled to a $290 credit from Plaintiffs,

which Plaintiffs have applied to the withdrawal liability amount thereby resulting in withdrawal

liability of $215,831. As of October 2008, the PBGC interest rate in effect for past due

withdrawal liability was 5%. (R. 57-1, ¶ 58.) Because Plaintiffs have prevailed on their motion

for summary judgment, they are entitled to collect the unpaid withdrawal liability, interest on

that amount, reasonable attorneys’ fees and costs, and the greater of an additional interest charge

or liquidated damages equal to 20% of the outstanding withdrawal liability. Plaintiffs shall

submit these amounts by affidavit to the Court within 10 days of the entry of this judgment.

## CONCLUSION

     For the foregoing reasons, the Court grants Plaintiffs’ motion for summary judgment.

Plaintiffs must file a statement of damages with the Court by April 19, 2010. Plaintiffs are

entitled to the full amount of accelerated withdrawal liability assessment in the amount of $216,121, less $290.  They are also entitled to interest, liquidated damages, and attorneys' fees and costs.

DATED:   April 5, 2010                           ENTERED

_____
AMY J. STEEVE
United States District Court Judge